**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

---

ALARM.COM INCORPORATED,

                        Plaintiff,

           v.

ANDREW HIRSHFELD, in his official capacity
performing the functions and duties of the Under
Secretary of Commerce for Intellectual Property
and Director, United States Patent and Trademark
Office, and the UNITED STATES PATENT AND
TRADEMARK OFFICE,

                      Defendants.

---

Civil Action No. _____

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

Administrative Procedure Act Case

---

        Plaintiff Alarm.com Incorporated ("Alarm.com"), by and through its undersigned

counsel, brings this Complaint for Declaratory and Injunctive Relief against Defendant Andrew

Hirshfeld, in his official capacity performing the functions and duties of the Under Secretary of

Commerce for Intellectual Property and Director of the United States Patent and Trademark

Office (the "Director"), and Defendant United States Patent and Trademark Office (the "Patent

Office") and alleges as follows:

**NATURE OF THE ACTION**

       1.    This is an action brought pursuant to the Administrative Procedure Act ("APA"),

5 U.S.C. §§ 701-706, challenging Defendants' August 7, 2020 decisions to vacate Alarm.com's

requests for *ex parte* reexamination of (i) claim 19 of U.S. Patent No. 6,147,601 (the "'601 *Ex*

*Parte* Decision"); (ii) claim 18 of U.S. Patent No. 6,535,123 (the "'123 *Ex Parte* Decision"); and

(iii) claims 17, 18, 22, 25 and 28 of U.S. Patent No. 6,462,654 (the "'654 *Ex Parte* Decision")

(together, the "*Ex Parte* Decisions").  *See* Exs. A-C.  In each of the *Ex Parte* Decisions, the Patent Office's Office of Patent Legal Administration ("OPLA"), acting on behalf of the Director, erroneously concluded that Alarm.com was estopped under 35 U.S.C. § 315(e)(1) from requesting *ex parte* reexamination of the challenged claims because of prior *inter partes* reviews ("IPRs") of those claims.

2.      The *Ex Parte* Decisions rest on a fundamental misreading of the unambiguous text of § 315(e)(1).  Section 315(e)(1) provides a narrow exception to the public's general right to request *ex parte* reexamination.  Under the plain language of the section, if an IPR has been instituted and finally decided as to a patent claim, the petitioner in that IPR may not seek *ex parte* reexamination of that patent claim on a "ground" that the petitioner "raised or reasonably could have raised during that inter partes review".  35 U.S.C. § 315(e)(1).  In the *Ex Parte* Decisions, however, the Director adopted and relied upon a "Clarification of General Policy and Practice" that transformed the statute's narrow exception into a broad policy and practice that "effectively bar[s]" the petitioner in an instituted IPR from *ever* requesting *ex parte* reexamination of a petitioned claim based on *any* prior art "reference" that the petitioner was aware of or could have discovered.  Ex. A ('601 *Ex Parte* Decision) at 10; Ex. B ('123 *Ex Parte* Decision) at 7; Ex. C ('654 *Ex Parte* Decision) at 5.  The *Ex Parte* Decisions were contrary to the unambiguous statutory text.  Section 315(e)(1) expressly states that estoppel applies only to a "*ground*" that the petitioner raised or "reasonably could have raised during" the relevant IPR.  35 U.S.C. § 315(e)(1) (emphases added).  A "ground" of unpatentability is not synonymous with a "reference".  A single "reference" may give rise to any number of "grounds" (particularly when combined with other "references").  *See, e.g.*, 35 U.S.C. § 312(a)(3).  And the fact that a prior art "reference" was known or reasonably could have been discovered does not mean that a "ground"

applying that reference reasonably could have been "raised" "during" the relevant IPR.  The Director's "policy and practice" expanded the estoppel beyond its statutory limits.

3.      For these and the other reasons explained below, the *Ex Parte* Decisions were arbitrary and capricious and contrary to law, in violation of 5 U.S.C. § 706(2)(A).  In addition, because the Director's "Clarification of General Policy and Practice" as applied in the *Ex Parte* Decisions improperly expanded the Patent Office's policy and practice regarding IPR estoppel beyond its statutory limits, the *Ex Parte* Decisions were "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right", in violation of 5 U.S.C. § 706(2)(C).

**PARTIES**

4.      Alarm.com is a Delaware corporation with its principal place of business located in Tysons, Virginia.  Alarm.com is the leading platform for intelligently connected property, offering a comprehensive suite of cloud-based solutions for smart residential and commercial properties, including interactive security, video monitoring, intelligent automation, energy management and wellness solutions.  Alarm.com makes significant investments in innovative research and development, resulting in hundreds of issued U.S. patents and numerous patent applications pending.

5.      Defendant Andrew Hirshfeld is the Under Secretary of Commerce for Intellectual Property and Director of the Patent Office.  The Director oversees the operations of the Patent Office and is statutorily vested with the authority to decide whether to institute *ex parte* reexamination of a patent claim.  35 U.S.C. § 304.  The Director is being sued in his official capacity.  His principal place of business is in Alexandria, Virginia.

6.      The Patent Office is a federal agency within the United States Department of Commerce and is headquartered in Alexandria, Virginia.

## JURISDICTION AND VENUE

7.      This case arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

8.      Pursuant to 5 U.S.C. § 702, Defendants have waived sovereign immunity for purposes of this suit.

9.      Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by 5 U.S.C. §§ 702-706, by Federal Rules of Civil Procedure 57 and 65, and by the inherent equitable powers of this Court.

10.     Venue is proper in this District under 28 U.S.C. § 1391(e) and 5 U.S.C. § 703 because Defendants are located and perform official duties in this District.

11.     Each of the *Ex Parte* Decisions is a final agency action subject to judicial review under 5 U.S.C. § 704.

12.     Because the *Ex Parte* Decisions were rendered solely on the basis of estoppel under 35 U.S.C. § 315(e)(1) and did not consider or decide whether a "substantial new question of patentability [was] raised", 35 U.S.C. § 303(c) does not bar this suit.

## RELEVANT FACTS

### The Patent System

13.     "To promote the progress of science and useful arts," the Constitution empowers Congress to "secur[e] for limited times to . . . inventors the exclusive right to their . . . discoveries." U.S. Const., art. I, § 8, cl. 8. Since the first patent laws were enacted in 1790, the U.S. patent system has been a key engine of innovation and economic growth. Companies like Alarm.com depend on the U.S. patent system both to provide strong legal protection for

meritorious patent claims and to "weed out bad patent claims efficiently", without the need for expensive litigation.  *Thryv, Inc v. Click-To-Call Techs., LP*, 140 S. Ct. 1367, 1374 (2020).

14.     To achieve these goals, and to ensure that bad patents do not inhibit innovation and competition, Congress has enacted parallel administrative processes for parties to seek review of the patentability of an issued claim:  *ex parte* reexamination and *inter partes* review ("IPR").  *See Thryv*, 140 S. Ct. at 1374 (2020) ("By providing for inter partes review, Congress, concerned about overpatenting and its diminishment of competition, sought to weed out bad patent claims efficiently."); *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018) ("Maybe the invention wasn't novel, or maybe it was obvious all along, and the patent owner shouldn't enjoy the special privileges it has received.  To remedy these sorts of problems, . . . Congress has supplemented litigation with various administrative remedies.  The first of these was ex parte reexamination.").

15.     "Any person at any time" may request that the Patent Office reexamine the patentability of an issued patent claim, through *ex parte* reexamination.  35 U.S.C. § 302.  If the Director concludes that a request raises a substantial new question of patentability ("SNQP"), the Director must order an *ex parte* reexamination to resolve the question of patentability.  *Id.* §§ 303-304.

16.     The Leahy-Smith America Invents Act ("AIA") established IPR as a parallel mechanism for challenging the patentability of an issued patent.  IPR is an adversarial "administrative process in which a patent challenger may ask the [Patent Office] to reconsider the validity of earlier granted patent claims."  *Thryv*, 140 S. Ct. at 1370; *see* 35 U.S.C. § 311 *et seq.*  To seek IPR, a person must file a petition identifying, "with particularity", "each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that

supports the grounds for the challenge to each claim".  35 U.S.C. § 312.  Within three months, the Director decides whether to institute IPR.  *Id.* § 314(b).  If the Director decides to institute IPR, the Patent Trial and Appeal Board ("PTAB") must conduct a trial and issue a "final written decision with respect to the patentability of any patent claim challenged" within one year.  *Id.* §§ 316(a)(11), 318(a).

17.     Section 315(e)(1) provides a narrow exception to the public's general right to request *ex parte* reexamination.  Under the plain language of the statute, if an IPR is instituted as to a patent claim and results in a final written decision, the petitioner in the IPR "may not request or maintain a proceeding before the Office with respect to that claim on any ground that the petitioner raised or reasonably could have raised during that inter partes review."

18.     The Patent Office requires that requests for *ex parte* reexamination include "[a] certification by the third party requester that the statutory estoppel provisions of 35 U.S.C. 315(e)(1) or 35 U.S.C. 325(e)(1) do not prohibit the requester from filing the ex parte reexamination request."  37 C.F.R. § 1.510(b)(6).

**The Relevant Patents**

19.     U.S. Patent No. 6,147,601 (the "'601 Patent"), U.S. Patent No. 6,535,123 ("'123 Patent") and U.S. Patent No. 6,462,654 ("'654 Patent") are members of the same patent family. Each issued to an HVAC company called Heat-Timer Corp., and each is directed to systems and methods for monitoring remote equipment, such as HVAC equipment.  The '601 Patent issued on November 24, 2000; the '123 Patent issued on March 18, 2003; and the '654 Patent issued on October 8, 2002.

20.     In or around March 2014, Vivint, Inc. ("Vivint"), a home security company, acquired the '601 Patent, the '123 Patent and the '654 Patent (among other patents) from Heat-Timer Corp.

**The Vivint Litigation**

21.     On June 2, 2015, Vivint sued Alarm.com in the United States District Court for the District of Utah (the "Vivint Litigation") for alleged infringement of, *inter alia*, 91 claims of the '601 Patent, the '123 Patent and the '654 Patent.  *See Vivint, Inc. v. Alarm.com Inc.*, Case No. 2:15-cv-00392-CW-CMR (D. Utah).

22.     In 2015 and 2016, and as explained in more detail below, Alarm.com timely petitioned for IPR of the claims asserted in the Vivint Litigation, and the PTAB instituted IPR as to certain of the petitioned claims.  In IPR, the PTAB held a number of those claims unpatentable.  However, as also explained below, due to the large number of claims in the asserted patents, the large number of potentially invalidating prior art combinations and the complexity of both the claims and the prior art, it was not possible for Alarm.com to address "with particularity" all relevant grounds for IPR within the PTAB's page limits in a single petition or a single IPR.

23.     The following claims remain asserted against Alarm.com in the Vivint Litigation: claim 19 of the '601 Patent; claim 18 of the '123 Patent; and claims 17, 18, 22, 25 and 28 of the '654 Patent.  As explained below, in June 2020, Alarm.com requested *ex parte* reexamination of each of those claims, and the Director improperly vacated Alarm.com's requests.

**The '601 *Ex Parte* Decision**

Petitions for IPR and Prior *Ex Parte* Reexamination Request as to the '601 Patent

24.     The '601 Patent contains 43 claims, which are directed to systems and methods for monitoring remote equipment, such as HVAC equipment.  The claims recite, among other things, communicating information concerning monitored equipment to a remote computer server, which sends notifications to specified remote communication devices when exception conditions are detected.  Such claims implicate a substantial body of prior art, including a large number of potentially invalidating prior art combinations.

25.     For example, a representative claim of the '601 Patent recites:

1. A method of monitoring remote equipment comprising the steps of:

a) determining a state of at least one parameter of at least one piece of the remote equipment;

b) communicating a message indicative of the state from the piece of remote equipment to a computer server as an incoming message;

c) enabling a user to remotely configure or modify a user-defined message profile containing outgoing message routing instructions, the user-defined message profile being storable on the computer server;

d) determining whether an incoming message is an incoming exception message indicative of improper operation of the piece of remote equipment;

e) if it is determined in step d) that an incoming message is an incoming exception message, forwarding at least one outgoing exception message based on the incoming message to at least one user-defined communication device specifiable in the user-defined message profile,

wherein the user can remotely configure or modify the user-defined message profile by remotely accessing the computer server.

26.     On October 30, 2015, Alarm.com filed a petition for IPR as to the '601 Patent that raised unpatentability grounds based on U.S. Patent No. 5,808,907 ("Shetty") and U.S. Patent No. 5,061,916 ("French") (among other references) (Case No. IPR2016-00116 (the "'116 Petition")).  On May 4, 2016, the PTAB instituted the petition as to all challenged claims except for claim 16 (the "'116 IPR").  On May 2, 2017, the PTAB issued a final written decision finding that claims 1, 2, 4, 6, 7, 10-15, 17, 18, 22, 23, 25, 29 and 38 were shown to be unpatentable while claims 5, 8, 9, 19-21, 26-28, 30, 31, 33-37 and 39-41 were not shown to be unpatentable.  On December 20, 2018, the Federal Circuit affirmed the PTAB's decision as to all of the claims that the PTAB had found to be unpatentable, and reversed as to claims 26, 27, 28 and 33, 34, 35 and 36, and remanded to the PTAB for further consideration.  On remand, the PTAB held claims 26, 27, 28 and 33, 34, 35 and 36 of the '601 Patent unpatentable.

27.     On August 30, 2017, after the conclusion of the '116 IPR, Alarm.com filed a request for *ex parte* reexamination of claims 3, 16, 24, 32, 42 and 43 of the '601 Patent (which were not at issue in the '116 IPR), on grounds based on Shetty, U.S. Patent No. 6,067,477 ("Wewalaarachchi") and U.S. Patent No. 6,970,081 ("Cheng").  In reexamination, the Patent Office rejected each of the challenged claims.

The '601 <em>Ex Parte</em> Request and Decision

28.     On June 4, 2020, Alarm.com filed a request for *ex parte* reexamination of claim 19 of the '601 Patent (the "'601 *Ex Parte* Request").  *See* Ex. D.

29.     Claim 19 of the '601 Patent, which depends from claim 1, recites:

1. A method of monitoring remote equipment comprising the steps of:

a) determining a state of at least one parameter of at least one piece of the remote equipment;

b) communicating a message indicative of the state from the piece of remote equipment to a computer server as an incoming message;

c) enabling a user to remotely configure or modify a user-defined message profile containing outgoing message routing instructions, the user-defined message profile being storable on the computer server;

d) determining whether an incoming message is an incoming exception message indicative of improper operation of the piece of remote equipment;

e) if it is determined in step d) that an incoming message is an incoming exception message, forwarding at least one outgoing exception message based on the incoming message to at least one user-defined communication device specifiable in the user-defined message profile,

wherein the user can remotely configure or modify the user-defined message profile by remotely accessing the computer server.

19. A method according to claim 1, wherein step c) further comprises the step of enabling selection of different user-defined communication devices to receive outgoing exception messages at different time periods in accordance with the message profile, the message profile being definable to have the exception messages forwarded to different specified remote communication devices at different times.

30.     The '601 *Ex Parte* Request presented three grounds for unpatentability (*i.e.*, SNQPs), none of which were previously considered by the PTAB in an instituted IPR of claim 19:  (i) obviousness over Shetty in combination with *BACnet: A Data Communication Protocol for Building Automation and Control Networks* (ANSI/ASHRAE Standard 135-1995) ("BACnet"); (ii) obviousness over Wewalaarachchi in combination with BACnet; and (iii) obviousness over Wewalaarachchi in combination with French.  Ex. D.

31.     As required by 37 C.F.R. § 1.510(b)(6), Alarm.com certified in the '601 *Ex Parte* Request that the statutory estoppel provisions of 35 U.S.C. §§ 315(e)(1) and 325(e)(1) did not prohibit Alarm.com from filing the '601 *Ex Parte* Request.  Ex. D at 3-4.  Alarm.com further

explained, in detail, why statutory estoppel does not apply to any of the grounds presented in the '601 *Ex Parte* Request.  *Id.* at 76-85.

32.     On June 12, 2020, the patent owner, Vivint, filed a petition under 37 C.F.R. § 1.183 to vacate the '601 *Ex Parte* Request, arguing that the request was barred under 35 U.S.C. §§ 315(e)(1) and 325(d).  Vivint did not substantively challenge any of the points set forth in the '601 *Ex Parte* Request explaining why statutory estoppel does not apply.

33.     On June 25, 2020, Alarm.com filed a petition under 37 C.F.R. §§ 1.182 and 1.183 to deny Vivint's June 12, 2020 petition, explaining why neither § 315(e)(1) nor § 325(d) barred the '601 *Ex Parte* Request.

34.     On August 7, 2020, OPLA, acting as the Director's designee, issued the '601 *Ex Parte* Decision, concluding that Alarm.com was estopped from requesting *ex parte* reexamination as to all three of the grounds raised in the '601 *Ex Parte* Request.  *See* Ex. A.  The '601 *Ex Parte* Decision was arbitrary and capricious, contrary to law and in excess of the Director's statutory authority, for at least two reasons.

35.     *First*, the '601 *Ex Parte* Decision was contrary to the statutory text. Section 315(e)(1) unambiguously provides that an IPR petitioner is only estopped from filing an *ex parte* reexamination request where (1) IPR was instituted and finally decided as to the patent claim for which *ex parte* reexamination is sought; and (2) the petitioner requests *ex parte* reexamination on a "ground" that the petitioner "raised or reasonably could have raised during that inter partes review"—*i.e.*, during the IPR that was instituted and finally decided.  35 U.S.C. § 315(e)(1).  The statute is predicated on the existence of an IPR that was instituted and finally decided.  And the estoppel applies only to grounds that the IPR petitioner actually raised during that IPR and grounds it reasonably could have added to that IPR.

36.     In the '601 *Ex Parte* Decision, the Director issued a "Clarification of General Policy and Practice" in which the Director concluded, based solely on legislative history, that once IPR is finally decided as to a patent claim, the estoppel provisions of § 315(e)(1) "effectively bar" the petitioner from requesting *ex parte* reexamination of that claim on any grounds.  Ex. A at 10.  Under the Director's "Clarification", statutory estoppel applies to any prior art "reference" that an IPR petitioner knew of at the time the petition was filed or reasonably could have discovered.  *Id.* at 9-10.  And the Director noted that, given the "number of commercial databases available to the public", "most patents and printed publications" would be "expected to be discovered by a reasonably diligent search".  *Id.*

37.     Applying the erroneous "Clarification", the Director concluded that because all of the references cited in the '601 *Ex Parte* Request purportedly were known to the Alarm.com at the time the '116 Petition was filed, Alarm.com was estopped from requesting *ex parte* reexamination based on any grounds supported by those references.  *See* Ex. A at 11-16.  The Director's decision thus ignored the plain language of the statute and was contrary to law.

38.     *Second*, the '601 *Ex Parte* Decision was contrary to the statutory scheme for IPR and the PTAB's own guidance regarding IPR petitions.  Under the AIA and the PTAB's own rules, it is not reasonable to raise every available ground in single IPR petition.  The AIA requires that an IPR petitioner identify each ground and supporting evidence "with particularity".  35 U.S.C. § 312(a)(3).  At the time Alarm.com filed the '116 Petition, the PTAB had set a limit of 60 pages per IPR petition and cautioned petitioners not to "present[] an overwhelming number of issues" and to "avoid submitting a repository of all the information that a judge could possibly consider".  *Office Patent Trial Practice Guide*, 77 Fed. Reg. 48756, 48763 (Aug. 14, 2012).  In view of the statutory requirements and the PTAB's own rules, to find that a ground "reasonably"

could have been raised in a concluded IPR, the Director was required to find that it would have been reasonable to present the ground in question—with particularity, within the PTAB's prescribed page limits and in accordance with the PTAB's guidance against petitioning multiple grounds—in the IPR that was actually filed, instituted and decided.  The Director failed to consider this issue.

39.     When the limitations imposed by the applicable statute and rules are properly taken into account, it is clear that, given the multiplicity of claims in the '601 Patent, the large number of potentially invalidating prior art combinations and the complexity of the claims and prior art, Alarm.com could not "reasonably" have raised the grounds cited in the '601 *Ex Parte* Request in the '116 IPR.

40.     The claims of the '601 Patent recite multiple elements relating to systems for routing messages to communication devices.  The claims of the '601 Patent implicate a substantial body of prior art—all of which disclosed the claimed features in different ways. Indeed, the '116 Petition was 60 pages long and raised five unpatentability grounds as to 38 claims.  To have raised in the '116 IPR the grounds presented in the '601 *Ex Parte* Request, Alarm.com would have needed to explain—"with particularity" and in compliance with the Patent Office's regulations and policies—entirely different grounds for unpatentability in addition to those already presented in the '116 Petition, applying additional prior art to those 38 claims.  Alarm.com explained those additional grounds, with particularity, in the '601 *Ex Parte* Request; that explanation spanned roughly 59 pages.  *See* Ex. D at 18-76.  The grounds raised in the '601 *Ex Parte* Request could not reasonably have been raised in the '116 IPR within the constraints imposed by the AIA and the PTAB's rules.

41.     Notably, none of the grounds raised in the '116 Petition relied on Wewalaarachchi or BACnet.  The grounds presented in the '116 Petition were based on combinations involving Shetty, which disclosed the basic architecture and most (if not all) of the components of the system claimed in the '601 Patent.  Like Shetty, Wewalaarachchi also disclosed the basic architecture and most (if not all) of the components claimed in the '601 Patent.  But the Wewalaarachchi disclosure was substantially different than Shetty's disclosure, using different terminology and disclosing the relevant functionality in different ways.  Wewalaarachchi expressly refers to BACnet as a communication protocol that could be used to operate the disclosed monitoring system, and BACnet disclosed certain elements of claim 19 of the '601 Patent.  To present the grounds based on Wewalaarachchi and BACnet in the '116 Petition, Alarm.com would have had to explain, with particularity, two entirely different references than those presented in the '116 Petition, and how those references disclosed all of the elements of the challenged claims of the '601 Patent.  The '601 *Ex Parte* Request provided just such a particularized explanation; it spanned roughly 29 pages.  *See* Ex. D at 41-69.  Alarm.com could not reasonably have added that 29-page particularized explanation of Wewalaarachchi and BACnet to its 60-page IPR petition based on Shetty.

### The '123 *Ex Parte* Decision

<u>Petitions for IPR as to the '123 Patent</u>

42.     The '123 Patent contains 20 claims, which are directed to systems for routing messages electronically based on a user-defined message profile.  The claims recite, among other things, a computer server that receives information from an information source and, when that information source reports a predetermined condition, transmits a message to a user-defined

remote communication device.  Such claims implicate a substantial body of prior art, including a large number of potentially invalidating prior art combinations.

43.     A representative claim of the '123 Patent recites:

1. A system for routing messages electronically, comprising:

at least one sensor detecting a state of at least one parameter; and

a computer server in remote communication with said sensor, said computer server having a user interface, a user being capable of remotely accessing said computer server via said user interface to remotely configure a user-defined message profile containing outgoing message routing instructions, said routing instructions being of a number of types of information,

wherein when said sensor detects a condition or an event, said server forwards at least one outgoing message to at least one predetermined user-defined remote communication device as specified in said user-defined message profile.

44.     On November 9, 2015, Alarm.com filed a petition for IPR as to the '123 Patent that raised unpatentability grounds based on the Shetty reference (Case No. IPR2016-00173 (the "'173 Petition")).  On May 10, 2016, IPR was instituted as to all challenged claims (the "'173 IPR").  On May 2, 2017, the PTAB issued a final decision finding that claims 1, 2, 4-6, 10, 13, and 15-17 were shown to be unpatentable, while claims 3, 7-9, 11, 12, 14 and 18-20 were not shown to be unpatentable.  On December 20, 2018, the Federal Circuit affirmed the PTAB's decision as to all of the claims that the PTAB had found to be unpatentable but reversed the PTAB's construction of certain other claims.  On remand, in light of the new construction, the PTAB held claims 3-5, 10 and 14-16 of the '123 Patent unpatentable.

The '123 *Ex Parte* Request and Decision

45.     On June 12, 2020, Alarm.com filed a request for *ex parte* reexamination of claim 18 of the '123 Patent (the "'123 *Ex Parte* Request").  *See* Ex. E.

46.     Claim 18 of the '123 Patent, which depends from claims 13 and 14, recites:

13. A control system for routing messages electronically, comprising a computer server in remote communication with a source of information, said computer server having a user interface, a user being capable of remotely accessing said computer server via said user interface to remotely configure a user-defined message profile containing outgoing message routing instructions, said routing instructions being of a number of types of information,

wherein when an information source reports a predetermined condition, said server forwards at least one outgoing message to at least one predetermined user-defined remote communication device as specified in said user-defined message profile.

14. A control system according to claim 13, said server being connected a plurality of information sources each having a respective identification code, said server further comprising:

a first memory on which identification codes of all of the information sources are stored;

at least one second memory in which communication device identification codes of all of said remote user-defined communication devices are stored, said communication device identification codes being configured in a plurality of said user-defined message profiles.

18. A system according to claim 14, wherein said server periodically generates a normal status message to said user-defined communications devices if an information source reports a normal status condition, said normal status message including an identification code of the respective information source.

47.      The '123 *Ex Parte* Request presented two grounds for unpatentability (*i.e.*, SNQPs), none of which were previously considered by the PTAB in an instituted IPR of claim 18:  (i) obviousness over Shetty in combination with French and BACnet; and (ii) obviousness over Wewalaarachchi in combination with French and BACnet.  Ex. E at 3.

48.      As required by 37 C.F.R. § 1.510(b)(6), Alarm.com certified in the '123 *Ex Parte* Request that the statutory estoppel provisions of 35 U.S.C. §§ 315(e)(1) and 325(e)(1) did not prohibit Alarm.com from filing the '123 *Ex Parte* Request.  Ex. E at 3-4.  Alarm.com further

explained, in detail, why statutory estoppel does not apply to either ground raised in the '123 *Ex Parte* Request. *Id.* at 105-15.

49.     The patent owner (Vivint) did not file a petition to vacate the '123 *Ex Parte* Request.

50.     On August 7, 2020, OPLA, acting as the Director's designee, issued the '123 *Ex Parte* Decision, concluding that Alarm.com was estopped from requesting *ex parte* reexamination as to both of the grounds raised in the '123 *Ex Parte* Request. *See* Ex. B.  The '123 *Ex Parte* Decision was arbitrary and capricious, contrary to law and in excess of the Director's statutory authority, for at least two reasons.

51.     *First*, for the reasons explained above (*see* ¶¶ 35-37),  the '123 *Ex Parte* Decision was contrary to the unambiguous statutory text of § 315(e)(1).

52.     *Second*, the '123 *Ex Parte* Decision was contrary to the statutory scheme for IPR and the PTAB's own guidance regarding IPR petitions.  As explained above (*see* ¶ 38), under the AIA and the PTAB's own rules, it is not reasonable to raise every available ground in single IPR petition.  When the limitations imposed by the applicable statute and rules are properly taken into account, it is clear that, given the multiplicity of claims in the '123 Patent, the large number of potentially invalidating prior art combinations and the complexity of the claims and the prior art, Alarm.com could not "reasonably" have raised the grounds cited in the '123 *Ex Parte* Request in the '173 IPR within the constraints imposed by the AIA and the PTAB's rules.

53.     The claims of the '123 Patent recite multiple elements relating to systems for routing messages to communication devices.  The claims of the '123 Patent implicate a substantial body of prior art—all of which disclosed the claimed features in different ways. Indeed, the '173 Petition was 48 pages long and raised three unpatentability grounds as to 20

claims.  To have raised in the '173 IPR the grounds presented in the '123 *Ex Parte* Request, Alarm.com would have needed to explain—"with particularity" and in compliance with the Patent Office's regulations and policies—entirely different grounds for unpatentability in addition to those already presented in the '173 Petition, applying the additional prior art to those 20 claims.  Alarm.com explained those additional grounds, with particularity, in the '123 *Ex Parte* Request; that explanation spanned roughly 87 pages.  *See* Ex. E at 18-104.  The grounds raised in the '123 *Ex Parte* Request could not reasonably have been raised in the '173 IPR.

54.     Notably, none of the grounds raised in the '173 Petition relied on Wewalaarachchi, BACnet or French.  As explained above, the Wewalaarachchi disclosure was completely different from the Shetty disclosure described in the '173 Petition, using different terminology and disclosing the relevant functionality in different ways.  Wewalaarachchi expressly refers to BACnet as a communication protocol that could be used to operate the disclosed monitoring system, and BACnet disclosed certain elements of claim 18 of the '123 Patent.  French disclosed an additional system.  To present the grounds based on Wewalaarachchi, BACnet and French in the '173 Petition, Alarm.com would have had to explain, with particularity, entirely different prior art combinations from those explained in the '173 Petition, and how those combinations disclosed all of the elements of the challenged claims of the '123 Patent.  The '123 *Ex Parte* Request provided just such a particularized explanation; it spanned roughly 54 pages.  *See* Ex. E at 32-42, 61-104.  Alarm.com could not reasonably have added that 54-page particularized explanation of Wewalaarachchi, BACnet and French to its 48-page IPR petition based on Shetty.

**The '654 *Ex Parte* Decision**

<u>Petitions for IPR as to the '654 Patent</u>

55.     The '654 Patent contains 28 claims, which are systems and methods for monitoring remote equipment based on a user-defined message profile.  The claims recite, among other things, an interface unit that monitors remote equipment and periodically sends a normal status message if the interface unit and/or equipment is functioning properly, and a computer server that sends an exception message to user-defined remote communication devices if a normal status message is not received within a predetermined interval.  Such claims implicate a substantial body of prior art, including a large number of potentially invalidating prior art combinations.

56.     A representative claim of the '654 Patent recites:

1. A method of monitoring remote equipment comprising the steps of:

a) attaching an interface unit to at least one piece of remote equipment;

b) communicating a message indicative of a state of the interface unit to a computer server as an incoming message;

c) enabling a user to remotely configure or modify a user-defined message profile containing outgoing message routing instructions, the user-defined message profile being storable on the computer server;

d) determining whether an incoming message has not been received by the computer server from the interface unit indicative of improper operation of the interface unit; and

e) if it is determined in step d) that an incoming message has not been received from the interface unit, forwarding at least one outgoing exception message based on the lack of the incoming message to at least one user-defined communication device specifiable in the user-defined message profile,

wherein the user can remotely configure or modify the user-defined message profile by remotely accessing the computer server.

57.     On November 6, 2015, Alarm.com filed a petition for IPR as to the '654 Patent that raised unpatentability grounds based on the Shetty reference, in combination with (among other references) U.S. Patent No. 6,040,770 ("Britton") (Case No. IPR2016-00161 (the "'161 Petition")).  On May 12, 2016, the PTAB instituted that petition as to claims 9, 10, 14, 17, 18, 22, and 25-28 (the "'161 IPR").  On May 10, 2017, the PTAB issued a final decision finding that claims 9, 10, 14 and 27 were shown to be unpatentable, while claims 17, 18, 22, 25, 26 and 28 were not shown to be unpatentable.

The '654 <em>Ex Parte</em> Request and Decision

58.     On June 30, 2020, Alarm.com filed a request for *ex parte* reexamination of claims 17, 18, 22, 25 and 28 of the '654 Patent (the "'654 *Ex Parte* Request").  *See* Ex. F.

59.     Claim 17 of the '654 Patent recites:

17. A system for monitoring remote equipment, comprising:

an interface unit, locally connected to at least one piece of remote equipment, said interface unit having a message generating mechanism for periodically sending a normal status message if said interface unit is functioning properly; and

a computer server in remote communication with said interface unit, said server adapted to receive said normal status messages generated by said interface unit, said computer server having a user interface, a user being capable of remotely accessing said computer server via said user interface to remotely configure a user-defined message profile containing outgoing message routing instructions,

wherein if a normal status message is not received by said server within a predetermined interval, said server forwards at least one outgoing exception message to at least one predetermined user-defined remote communication device based on the lack of said normal status message as specified in said user-defined message profile.

60.   Claim 18 of the '654 Patent, which depends from claim 17, recites:

17. A system for monitoring remote equipment, comprising:

an interface unit, locally connected to at least one piece of remote equipment, said interface unit having a message generating mechanism for periodically sending a normal status message if said interface unit is functioning properly; and

a computer server in remote communication with said interface unit, said server adapted to receive said normal status messages generated by said interface unit, said computer server having a user interface, a user being capable of remotely accessing said computer server via said user interface to remotely configure a user-defined message profile containing outgoing message routing instructions,

wherein if a normal status message is not received by said server within a predetermined interval, said server forwards at least one outgoing exception message to at least one predetermined user-defined remote communication device based on the lack of said normal status message as specified in said user-defined message profile.

18. A system according to claim 17, wherein said message generating mechanism of the interface unit forwards said normal status messages to said computer server via at least one of a plurality of communication media, said media comprising at least one of a cellular telephone network, radio transmissions, telephone lines, and the Internet.

61.   Claim 22 of the '654 Patent, which depends from claim 17, recites:

17. A system for monitoring remote equipment, comprising:

an interface unit, locally connected to at least one piece of remote equipment, said interface unit having a message generating mechanism for periodically sending a normal status message if said interface unit is functioning properly; and

a computer server in remote communication with said interface unit, said server adapted to receive said normal status messages generated by said interface unit, said computer server having a user interface, a user being capable of remotely accessing said computer server via said user interface to remotely configure a user-defined message profile containing outgoing message routing instructions,

wherein if a normal status message is not received by said server within a predetermined interval, said server forwards at least one

outgoing exception message to at least one predetermined user-defined remote communication device based on the lack of said normal status message as specified in said user-defined message profile.

22. A system according to claim 17, wherein said remote communication devices include at least one of a facsimile machine, an e-mail receiving device, a cellular telephone, a beeper, a pager, a PCS device, and a land line telephone.

62.    Claim 25 of the '654 Patent recites:

25. A system for monitoring remote equipment, comprising:

a sensor in local communication with a piece of remote equipment, said sensor detecting a state of at least one parameter of the piece of remote equipment;

an interface unit, locally connected to said sensor, said interface unit having a message generating mechanism for periodically sending a normal status message if the piece of remote equipment is functioning properly; and

a computer server in remote communication with said interface unit, said server adapted to receive said normal status messages generated by said interface unit, said computer server having a user interface, a user being capable of remotely accessing said computer server via said user interface to remotely configure a user-defined message profile containing outgoing message routing instructions,

wherein if a normal status message is not received by said server within a predetermined interval, said server forwards at least one outgoing exception message to at least one predetermined user-defined remote communication device based on the lack of said normal status message as specified in said user-defined message profile.

63.    Claim 28 of the '654 Patent recites:

28. A system for remotely monitoring equipment having at least one built-in sensor which detects a state of at least one parameter of the equipment, comprising:

an interface unit, locally connected to the equipment and in communication with the built-in sensor, said interface unit having a message generating mechanism for periodically sending a normal status message if the equipment and/or said interface unit are functioning properly; and

a computer server in remote communication with said interface unit, said server adapted to receive said normal status messages generated by said interface unit, said computer server having a user interface, a user being capable of remotely accessing said computer server via said user interface to remotely configure a user-defined message profile containing outgoing message routing instructions,

wherein if a normal status message is not received by said server within a predetermined interval, said server forwards at least one outgoing exception message to at least one predetermined user-defined remote communication device based on the lack of said normal status message as specified in said user-defined message profile.

64.     The '654 *Ex Parte* Request presented four unpatentability grounds (*i.e.*, SNQPs), none of which were previously considered by the PTAB in an instituted IPR of claims 17, 18, 22, 25 or 28:  (i) obviousness over Shetty in combination with Cheng; (ii) obviousness over Shetty in combination with Cheng and U.S. Patent No. 6,054,920 ("Smith"); (iii) obviousness over Wewalaarachchi in combination with Cheng; and (iv) obviousness over Wewalaarachchi in combination with Cheng and Smith.  Ex. F.

65.     As required by 37 C.F.R. § 1.510(b)(6), Alarm.com certified in the '654 *Ex Parte* Request that the statutory estoppel provisions of 35 U.S.C. §§ 315(e)(1) and 325(e)(1) did not prohibit Alarm.com from filing the '654 *Ex Parte* Request.  Ex. F at 4.  Alarm.com further explained, in detail, why statutory estoppel does not apply to any of the grounds raised in the '654 *Ex Parte* Request.  *Id.* at 215-22.

66.     The patent owner (Vivint) did not file a petition to vacate the '654 *Ex Parte* Request.

67.     On August 7, 2020, OPLA, acting as the Director's designee, issued the '654 *Ex Parte* Decision, concluding that Alarm.com was estopped from requesting *ex parte* reexamination as to each of the grounds raised in the '654 *Ex Parte* Request.  *See* Ex. C.  The

'654 *Ex Parte* Decision was arbitrary and capricious, contrary to law and in excess of the Director's statutory authority, for at least two reasons.

68.     *First*, for the reasons explained above (*see* ¶¶ 35-37),  the '654 *Ex Parte* Decision was contrary to the unambiguous statutory text of § 315(e)(1).

69.     *Second*, the '654 *Ex Parte* Decision was contrary to the statutory scheme for IPR and the PTAB's own guidance regarding IPR petitions.  As explained above (*see* ¶ 38), under the AIA and the PTAB's own rules, it is not reasonable to raise every available ground in single IPR petition.  When the limitations imposed by the applicable statute and rules are properly taken into account, it is clear that, given the multiplicity of claims in the '654 Patent, the large number of potentially invalidating prior art combinations and the complexity of the claims and prior art, Alarm.com could not "reasonably" have raised the grounds cited in the '654 *Ex Parte* Request in the '161 IPR within the constraints imposed by the AIA and the PTAB's rules.

70.     The claims of the '654 Patent recite multiple elements relating to systems for routing messages to communication devices.  The claims of the '654 Patent implicate a substantial body of prior art—all of which disclosed the claimed features in different ways. Indeed, the '161 Petition was 58 pages long and raised three unpatentability grounds as to 20 claims.  To have raised in the '161 IPR the grounds presented in the '654 *Ex Parte* Request, Alarm.com would have needed to explain—"with particularity" and in compliance with the Patent Office's regulations and policies—entirely different grounds for unpatentability in addition to those already presented in the '161 Petition, applying that additional prior art to those 20 claims.  Alarm.com explained those additional grounds, with particularity, in the '654 *Ex Parte* Request; that explanation spanned roughly 195 pages.  *See* Ex. F at 20-214.  The grounds raised in the '654 *Ex Parte* Request could not reasonably have been raised in the '161 IPR.

71.     Notably, none of the grounds raised in the '161 Petition relied on Wewalaarachchi, Cheng or Smith.  As explained above, the Wewalaarachchi disclosure was completely different than the Shetty disclosure described in the '161 Petition, using different terminology and disclosing the relevant functionality in different ways.  Cheng and Smith provided additional, different disclosures.  To present the grounds based on Wewalaarachchi, Cheng and Smith in the '161 Petition, Alarm.com would have had to explain, with particularity, each of those three references and how they disclosed all of the elements of the challenged claims of the '654 Patent.  The '654 *Ex Parte* Request provided just such a particularized explanation; it spanned roughly 103 pages.  *See* Ex. F at 42-44, 116-214.  Alarm.com could not reasonably have added that 103-page particularized explanation of Wewalaarachchi, Cheng and Smith to its 58-page IPR petition based on Shetty and Britton.

### Related IPRs

72.     During the relevant time period, the Alarm.com filed other IPR petitions as to the '601, '654 and '123 Patents.  The PTAB denied institution of four of those petitions on the merits (Case Nos. IPR2015-02004, IPR2016-00155, IPR2015-01995 and IPR2015-02003) and denied institution of the four other petitions on purely discretionary grounds without addressing the merits (Case Nos. IPR2016-01080, IPR2016-01110, IPR2016-01124 and IPR2016-01126).

### COUNT I

(Final Agency Action in Violation of 5 U.S.C. §§ 706(2)(A), (C) as to the '601 *Ex Parte* Decision)

73.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein.

74.     The '601 *Ex Parte* Decision constitutes a final agency action of the Patent Office within the meaning of 5 U.S.C. § 704.

75.     There are no administrative remedies available to Alarm.com to challenge the Director's determination.

76.     Under the APA, the Court "shall . . . hold unlawful and set aside" final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law", 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right", *id.* § 706(2)(C).

77.     The '601 *Ex Parte* Decision violated § 706(2)(A) because it was contrary to law and arbitrary and capricious, and violated § 706(2)(C) because the Director exceeded his statutory authority in adopting and applying the "Clarification of General Policy and Practice" recited in the '601 *Ex Parte* Decision.

78.     The '601 *Ex Parte* Decision and the "Clarification of General Policy and Practice" therein apply the statutory estoppel to any prior art reference that was known to an IPR petitioner or that the IPR petitioner reasonably could have discovered.  The statute, however, is clear that the estoppel applies only to grounds that the petitioner raised or reasonably could have raised during the instituted IPR.  35 U.S.C. § 315(e)(1).  Grounds are different than references. The mere fact that a reference could reasonably have been discovered does not mean that all grounds based on that reference could reasonably have been raised during the IPR that was finally decided.  In view of the statutory requirement that IPR petitions be pled with particularity and the PTAB's strict page limits, guidance against petitioning multiple grounds and limitations on raising new grounds post-institution—and given the multiplicity of claims in the '601 Patent, the large number of potentially invalidating prior art combinations and the complexity of the claims and the prior art—Alarm.com could not reasonably have raised during the '116 IPR the grounds cited in the '601 *Ex Parte* Request.

## COUNT II

(Final Agency Action in Violation of 5 U.S.C. §§ 706(2)(A), (C) as to the '123 *Ex Parte*
Decision)

79.     Plaintiff incorporates by reference the allegations contained in the preceding

paragraphs as though set forth in full herein.

80.     The '123 *Ex Parte* Decision constitutes a final agency action of the Patent Office

within the meaning of 5 U.S.C. § 704.

81.     There are no administrative remedies available to Alarm.com to challenge the

Director's determination.

82.     Under the APA, the Court "shall . . . hold unlawful and set aside" final agency

action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law", 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or

short of statutory right", *id.* § 706(2)(C).

83.     The '123 *Ex Parte* Decision violated § 706(2)(A) because it was contrary to law

and arbitrary and capricious, and violated § 706(2)(C) because the Director exceeded his

statutory authority in adopting and applying the "Clarification of General Policy and Practice"

recited in the '123 *Ex Parte* Decision.

84.     The '123 *Ex Parte* Decision and the "Clarification of General Policy and

Practice" therein apply the statutory estoppel to any prior art reference that was known to an IPR

petitioner or that the IPR petitioner reasonably could have discovered.  The statute, however, is

clear that the estoppel applies only to grounds that the petitioner raised or reasonably could have

raised during the instituted IPR.  35 U.S.C. § 315(e)(1).  Grounds are different than references.

The mere fact that a reference could reasonably have been discovered does not mean that all

grounds based on that reference could reasonably have been raised during the IPR that was

finally decided.  In view of the statutory requirement that IPR petitions be pled with particularity and the PTAB's strict page limits, guidance against petitioning multiple grounds and limitations on raising new grounds post-institution—and given the multiplicity of claims in the '123 Patent, the large number of potentially invalidating prior art combinations and the complexity of the claims and the prior art—Alarm.com could not reasonably have raised during the '173 IPR the grounds cited in the '123 *Ex Parte* Request.

### COUNT III

(Final Agency Action in Violation of 5 U.S.C. §§ 706(2)(A), (C) as to the '654 *Ex Parte* Decision)

85.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein.

86.     The '654 *Ex Parte* Decision constitutes a final agency action of the Patent Office within the meaning of 5 U.S.C. § 704.

87.     There are no administrative remedies available to Alarm.com to challenge the Director's determination.

88.     Under the APA, the Court "shall . . . hold unlawful and set aside" final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law", 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right", *id.* § 706(2)(C).

89.     The '654 *Ex Parte* Decision violated § 706(2)(A) because it was contrary to law and arbitrary and capricious, and violated § 706(2)(C) because the Director exceeded his statutory authority in adopting and applying the "Clarification of General Policy and Practice" recited in the '654 *Ex Parte* Decision.

90.     The '654 *Ex Parte* Decision and the "Clarification of General Policy and Practice" therein apply the statutory estoppel to any prior art reference that was known to an IPR petitioner or that the IPR petitioner reasonably could have discovered.  The statute, however, is clear that the estoppel applies only to grounds that the petitioner raised or reasonably could have raised during the instituted IPR.  35 U.S.C. § 315(e)(1).  Grounds are different than references.  The mere fact that a reference could reasonably have been discovered does not mean that all grounds based on that reference could reasonably have been raised during the IPR that was finally decided.  In view of the statutory requirement that IPR petitions be pled with particularity and the PTAB's strict page limits, guidance against petitioning multiple grounds and limitations on raising new grounds post-institution—and given the multiplicity of claims in the '654 Patent, the large number of potentially invalidating prior art combinations and the complexity of the claims and the prior art—Alarm.com could not reasonably have raised during the '161 IPR the grounds cited in the '654 *Ex Parte* Request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in its favor and:

A.      Set aside the '601 *Ex Parte* Decision, '123 *Ex Parte* Decision and '654 *Ex Parte* Decision;

B.      Declare that estoppel under 35 U.S.C. § 315(e)(1) does not apply to any of the grounds presented in the '601 *Ex Parte* Request, '123 *Ex Parte* Request and '654 *Ex Parte* Request;

C.      Permanently enjoin Defendants from refusing under 35 U.S.C. § 315(e)(1) to order *ex parte* reexamination based on the '601 *Ex Parte* Request, '123 *Ex Parte* Request and '654 *Ex Parte* Request;

D.      Permanently enjoin Defendants from applying the "Clarification of

General Policy and Practice" as to the grounds presented in the '601 *Ex Parte* Request, '123 *Ex*

*Parte* Request and '654 *Ex Parte* Request, and as to grounds presented in any future requests or

petitions before the Patent Office;

E.      Order Defendants to consider forthwith whether the '601 *Ex Parte*

Request, '123 *Ex Parte* Request and '654 *Ex Parte* Request set forth substantial new questions of

patentability and, if so, to order reexamination as to each of the subject patents;

F.      Award Plaintiff its costs and attorneys' fees and expenses as allowed by

law; and

G.      Provide such other and further relief as the Court deems appropriate.

February 12, 2021

By       /s/ Dabney J. Carr

TROUTMAN PEPPER HAMILTON
SANDERS LLP
Dabney J. Carr, IV, VSB No. 28679
1001 Haxall Point, 15th Floor
Richmond, VA 23219
(804) 697-1238
(804) 697-1339 (fax)
dabney.carr@troutman.com

CRAVATH, SWAINE & MOORE LLP
Richard J. Stark
Sharonmoyee Goswami
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
rstark@cravath.com
sgoswami@cravath.com

*Counsel for Plaintiff Alarm.com Incorporated*